June 27, 1979

## 79-45 MEMORANDUM OPINION FOR COUNSEL TO THE PRESIDENT

### Advisory Committees—Application of the Russell Amendment (31 U.S.C. § 696)

This responds to your request for an informal opinion on a legal question that had arisen in connection with a proposed Executive order reconstituting the National Advisory Committee for Women. That order redesignated the committee and removed its nonadvisory functions. Your question is whether this Office concurred in the general view taken by the Office of Management and Budget (OMB) that the so-called "Russell amendment" (31 U.S.C. § 696) does not limit the use of Government funds to pay the expenses of an advisory committee if (1) the funds are otherwise available for use in the procurement of advice of the kind that the committee provides and (2) the committee has no nonadvisory functions. We advised you informally that we concurred in OMB's view. This memorandum is a brief statement of the reasons for our opinion.

The Russell amendment provides that no funds may be used to pay the expenses of any "agency or instrumentality" if (1) the agency or instrumentality has been in existence for more than 1 year and (2) Congress has not appropriated "any money specifically for such agency or instrumentality or specifically authorized the expenditure of funds by it." 31 U.S.C. § 696.

Enacted in 1944 as a rider to an appropriation bill, the Russell amendment had an interesting preenactment history. It represented an attempt to use the power of the purse to curtail the activities of certain nonstatutory executive "agencies" that had been created by Executive order. In point of fact, it was directed at a particular agency—the Committee on Fair Employment Practices. That committee had no clear statutory basis; but it exercised a number of substantive powers, and it had taken vigorous action to diminish racially discriminatory practices in employment. These actions were obnoxious to Senator Russell and others who opposed the early civil rights movement. Moreover, with regard to that committee and others, there was doubt in some quarters that substantive actions taken

by nonstatutory agencies were lawful in the absence of actual statutory authority.

As to the present question, there is no clear indication either in the language of the statute or in its legislative history that the Congress intended to do anything other than prevent the expenditure of funds for agencies such as the Committee on Fair Employment Practices—agencies that Senator Russell would later call "action agencies."[1] In particular, there is no clear indication that the Russell amendment was intended to prevent constitutional or statutory officers from using funds to procure advice on matters within their jurisdictions, if the funds were otherwise available for that purpose. Prior to enactment of the Federal Advisory Committee Act, 5 U.S.C. App. § 1 *et seq.,* the Comptroller General and representatives of the Bureau of the Budget suggested that the statute could be interpreted broadly in this context, but we know of no judicial decision that settles the point.

In 1972 Congress enacted comprehensive legislation that addressed many of the administrative and legal questions that arise in connection with the longstanding practice of procuring advice from *ad hoc* "advisory committees." The Federal Advisory Committee Act did a number of important things. First, it expressly sanctioned the creation of advisory committees by Executive order. 5 U.S.C. App. § 2 *et seq.* Second, in contemplation that advisory committees would indeed expend agency funds from time to time, it created a system of agency reporting and record-keeping that was designed to subject advisory committees to tighter administrative and legislative control in fiscal matters, 5 U.S.C. App. § 12(a); and it affirmatively required agencies to provide support services for advisory committees in certain circumstances. 5 U.S.C. App. § 12(b). Third, it provided generally that in the absence of some specific authorization, advisory committees should be purely advisory in nature. 5 U.S.C. App. §§ 2(b)(6), 9(b). Fourth, it provided that advisory committees should generally have a life of 2 years. 5 U.SC. App. § 14(a). Finally, it gave the Office of Management and Budget general responsibility for "all matters relating to advisory committees." 5 U.S.C. App. § 7. In that connection, it required the Director of OMB to review advisory committees annually, to make appropriate administrative and legislative recommendations concerning them, and to include in his annual budget recommendations a summary of the amounts he "deems necessary" for the expenses of advisory committees. 5 U.S.C. App. § 7(e).

Because of OMB's unique statutory responsibilities for "all matters relating to advisory committees," OMB's opinion on questions arising in the administration of the relevant statutes is entitled to substantial weight. We should defer to it unless there are compelling indications that it is wrong. *Red Lion Broadcasting Co.* v. *FCC,* 395 U.S. 367, 381 (1969); *see,*

---

[1] *See* 90 CONGRESSIONAL RECORD 6022-21 (1944).

*Zemel* v. *Rusk,* 381 U.S. 1, 11–12 (1965); *Udall* v. *Tallman,* 380 U.S. 1, 16–18 (1965). We have reviewed all of the relevant materials and find no compelling reason to question OMB's conclusion that the Russell amendment does not limit the availability of Government funds for payment of the expenses of purely advisory committees.

There are two views of this question that are consistent with the view taken by OMB. The first gives controlling weight to the original legislative intention. The Russell amendment was intended to prevent nonstatutory agencies or instrumentalities from exercising actual governmental power without statutory authority. It was never intended to prevent statutory or constitutional officers from using Government money to obtain advice concerning their own duties, provided they are otherwise authorized to do so. Mere advisers are not "agencies" or "instrumentalities" of Government for purposes of the Russell amendment. They do not become "agencies" or "instrumentalities" merely because they meet and advise collectively. They become "agencies" or "instrumentalities" for Russell amendment purposes only if the officer to whom they report seeks to invest them with actual authority to take substantive action on his or the Government's behalf.

This interpretation of the Russell amendment is entirely consistent with the views that Senator Russell expressed when he first proposed the measure. We take the liberty of quoting his remarks at length:

> Mr. President, the purpose of the committee amendment, which is apparent from a reading thereof, is to retain in the Congress the power of legislating and creating bureaus and departments of the Government, and of giving to Congress the right to know what the bureaus and departments of the Government which have been created by Executive order are doing.
>
> * * * I realize, Mr. President, that in time of war, emergencies may arise which might dictate that the executive branch of the Government should immediately create some agency to deal with an immediate difficulty, but certainly there is no excuse for the continuance of an agency which has been in existence for longer than 12 months for which the Congress has not appropriated, or for which the Congress has not had any opportunity to appropriate.
>
> Secondly, Mr. President, *no agency which has power to issue orders affecting the lives and business of the American people should stay in existence for more than 12 months unless the Congress has passed upon an appropriation for such agency.* I have made an effort to ascertain the number of agencies which would be affected by this provision. According to a report which was filed by the Bureau of the Budget in response to a request which I made of the director of that agency, about 13 agencies would be affected.

* * * * * * *

I do not believe, Mr. President, that any lengthy discussion of this amendment is necessary. Its purpose is clear. Certainly those who have been complaining about bureaucrats and bureaucracy in this country, and who have heretofore complained because the Congress had not created or passed upon such agencies, should support this amendment and thereby give Congress the right at least to keep advised as to what all the different agencies of the Government are doing.

* * * * * * *

Of course, everyone has his pet agencies, everyone has departments which he wants preserved, and if we start action like that proposed, if we are to say that the President of the United States can legislate by Executive order when we favor the objective which he is seeking, we should say that we favor the President of the United States taking to himself the power that is vested by the Constitution in the Congress of the United States, and legislating and creating departments of government which issue orders that bring the people of the United States before them, and pass orders which direct people how they shall proceed in their daily business. [90 CONGRESSIONAL RECORD 3059–3061 (1944) (emphasis added.)]

Turning from the legislative history to the statutory text itself, we note that the language Senator Russell chose to adopt in framing his proposal is peculiarly apt if we accept the view that he had "action agencies" in mind. The language is less appropriate if we assume that there was a larger purpose behind it. In common legal parlance an "agency" or "instrumentality" is an entity or means through which a principal acts or exerts power. An individual or group that advises the Government but does not act on the Government's behalf or exert governmental power is not an "agency" or "instrumentality" of Government in that limited sense. To be sure, these words can be read more expansively. The text could be construed to refer to any entity established by the Government for a governmental purpose—any "establishment" or division within the Government, whether or not it acts on behalf of the Government or exerts any governmental power. But when a statutory text is open to more than one construction, we should consult other materials to determine what was intended; and, as we have said, when one consults the legislative history of the Russell amendment, one finds a very substantial basis for the conclusion that Senator Russell was concerned, not with advisory or other ancillary processes, but with the unauthorized exercise of actual governmental power by agencies not created or authorized by Congress. That history supports a technical and limited construction of the critical language.

This brings us to the second argument that supports the position taken by OMB. Whether or not one assumes that the Russell amendment was originally intended to apply to nonstatutory advisers or advisory groups, the Federal Advisory Committee Act has intervened. It has specifically

266

authorized the creation of purely advisory committees; it has provided that they may have a 2-year life; and it has contemplated, and made provision for, the practice of using agency funds to support advisory committees. Accordingly, if indeed agency funds may otherwise be lawfully expended for such a purpose, there is no longer any reason, under the Russell amendment, to bar an expenditure of funds in support of an advisory committee merely because the committee has been in existence for more than 1 year. To that extent, either the Federal Advisory Committee Act has superseded the Russell amendment in its application to purely advisory committees, or the Act has brought advisory committees within that class of entities to which Senator Russell had no objection: entities that exist by virtue of statutory authority.

It would be possible to construe these statutes in another way. Implied repeals are disfavored. Standing alone and strictly construed, the Russell amendment applies to any agency or instrumentality, whether or not the existence of the agency or instrumentality is authorized by statute; and so construed, the Russell amendment could be interpreted as imposing an across-the-board requirement for additional, "specific" authorization for any expenditure of money by or for any agency or instrumentality whenever the agency or instrumentality has been in existence for 1 year. We doubt, however, that such a broad construction would be true to the underlying legislative purpose. Given that purpose, if (1) an agency or instrumentality performs functions that are indeed authorized by statute and (2) a law or appropriation makes funds available for the support of such functions, the Russell amendment should not be interpreted as imposing additional, "specific" authorization requirements merely because the agency or instrumentality has been in existence for 1 year. If the function is authorized, the only real question is the one that is always present, no matter how old or young the agency may be: are the funds in question actually available for support of that function?

This appears to be the approach that the Comptroller General has taken in matters involving issues of this kind,[2] and it is a reasonable one. If

---

[2] For example, in his opinion on agency funding of the National Commission on the Observance of International Women's Year (B-182398, January 13, 1977), the Comptroller General attributed no significance whatever to the fact that some of the funds were used to support activities conducted during the first year of the Commission's existence, while others were used for activities in the second year. The legal question was the same in either case: whether the agency in question was authorized to expend funds to support functions of the kind that the commission performed. Thus, in the case of the Department of State, the Comptroller General found sufficient authority for an expenditure in support of the commission in the Department of State's general statutory duty to "provide for the participation by the United States in international activities * * * for which provision has not been made by the terms of any treaty, convention, or Special Act of Congress * * * [and] * * * pay the expenses of participation in [such] activities * * *." 22 U.S.C. § 2672. Nothing more "specific" was required. In the case of other agencies, the Comptroller General found insufficient authority under the statutes the agencies administered.

267

function is authorized by statute, and there is authorization for the expenditure of funds to support such a function, the Russell amendment does not require a more "specific" authorization merely because the agency or instrumentality may be more than 1 year old.

MARY C. LAWTON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*